**R. J. RAUSAW and Morris J. Merritt,
Plaintiffs,**

**v.**

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 64–H–489.**

United States District Court
S. D. Texas,
Houston Division.

March 17, 1966.

Dougal C. Pope, Houston, Tex., for plaintiffs.

Woodrow Seals, U. S. Atty., Houston, Tex., and Robert L. Waters, Ass't. U. S. Atty., Ft. Worth, Tex., for defendant.

NOEL, District Judge.

This case is before the Court upon plaintiffs' motion for judgment. The Court grants plaintiffs' motion as to the four quarters of 1956 and denies it as to the first two quarters of 1957, for the reasons set out below.

This is an action for refund of federal excise taxes. During the year 1956 and for the first two quarters of 1957, plaintiffs were engaged in a partnership entitled "El Dorado Ballroom," at Houston, Texas. During each of the quarters for the year 1956 and the first two quarters of the year 1957, plaintiffs caused quarterly excise tax returns to be filed on behalf of the partnership of El Dorado Ballroom on or before the due date for the four quarters of the year 1956 and the first two quarters of the year 1957. These returns were filed on U. S. Treasury Department Forms 720, entitled "Quarterly Federal Excise Tax Return." Form 720 is a tax return that covers numerous excise taxes, including cabaret and admission taxes.[1]

For the quarters in those years, plaintiffs filed federal excise tax returns indicating thereon an admission tax liability and further indicating a total excise tax liability exactly equal to the stated admission tax liability. No statement or indication was made on the Form 720

---

1. During the quarters in question, plaintiffs used four different versions of Form 720: the first quarter of 1956 uses the revision of April 1955, the second quarter of 1956 uses the revision of October 1955, the third and fourth quarters of 1956 use the revision of July 1956, and the first two quarters of 1957 use the revision of January 1957. However, these revisions are of no significance insofar as the decision of this Court is concerned.

with regard to a cabaret tax liability, nor was any denial of cabaret tax liability set out. No separate cabaret excise tax returns were filed by the plaintiffs for 1956 and 1957.

Sometime prior to October 1, 1960, an Internal Revenue agent made a determination that the partnership of El Dorado Ballroom was liable for cabaret taxes. The agent took the position that the Quarterly Federal Excise Tax Returns which had been filed for the four quarters in 1956 and the first two quarters of 1957 for this partnership were not returns for cabaret tax purposes. The cabaret taxes which the Internal Revenue agent determined were owing by the El Dorado Ballroom for the year 1956 and the first two quarters of 1957 were assessed against plaintiffs on October 1, 1960. After these taxes were paid by plaintiffs, they filed timely claims for refunds.

Plaintiffs filed a motion for summary judgment in which they argued that when the assessment was made on October 1, 1960 for these additional taxes, the three-year statute of limitations in Section 6501, Internal Revenue Code of 1954, applied to all of these quarters and the assessment was null and void. The Court overruled plaintiffs' motion for summary judgment in a written opinion dated August 27, 1965.

■ The case on the merits was tried before a jury. In response to special interrogatories, the jury found as a fact that the bar and cloakroom sales at the establishment known as El Dorado Ballroom were *incidental* to its operation during the four quarters of 1956, but were *not incidental* to its operation during the first two quarters of 1957.[2] The jury found as a fact that the amount of the bar and cloakroom sales from the El Dorado Ballroom subject to the cabaret tax for the first quarter of 1957 was

$4,693.27, and for the second quarter of 1957, was $4,872.12. Inasmuch as the jury resolved this issue in favor of plaintiffs for the four quarters of 1956, plaintiffs' motion as to these quarters is granted, and plaintiffs' motion as to the first two quarters of 1957 is accordingly denied.

Plaintiffs argue again, however, that the question of limitations must be resolved in their favor. As noted above, the Court overruled plaintiffs' motion for summary judgment based on the identical contention. In denying plaintiffs' motion for summary judgment on this point, the Court held that the Quarterly Federal Excise Tax Return which plaintiffs filed on Form 720 as provided by the U. S. Treasury Department for their admission tax liability was not sufficient to constitute also a cabaret tax return for limitations purposes. Nonetheless, the Court will elaborate its views on this issue.

The Court will use plaintiffs' Quarterly Federal Excise Tax Return for the first quarter of 1957 to illustrate the problem. Form 720[3] divides the various excise taxes into two columns under the proper headings. In the column on the lefthand side of the page, there is a heading entitled "Facilities and Services." Immediately under this heading is a line entitled "Admissions." In the space to the right of the heading "Admissions," plaintiffs inserted the amount $291.05. Three lines below the line entitled "Admissions" is a line entitled "Roof Gardens, Cabarets, etc." On this line plaintiffs made no entry whatsoever, and on the line entitled "TOTAL," at the bottom of the column on the righthand side of the page plaintiffs entered the identical amount, $291.05. On line 1 of the tax return itself, entitled "Total Tax," plaintiffs also inserted the amount $291.05. The return thus reveals that the only ex-

---

**2.** The following interrogatory is typical of the group submitted:

"Do you find from a preponderance of the evidence that the bar and cloakroom sales at the establishment known as El Dorado Ballroom were incidental to the

operation of said establishment for the second quarter of 1956?

"Answer: 'They were incidental' or 'They were not incidental.' "

**3.** Revision of January 1957.

cise tax for which plaintiffs acknowledged liability was the tax for Admissions. Plaintiffs made no entry on the line of any other excise tax.

Plaintiffs now contend that the returns that they filed in the above manner should have put the Internal Revenue Service on notice that they denied liability for cabaret taxes. Plaintiffs argue that when anyone from Internal Revenue Service would look at this return he would immediately know that if nothing was entered as a cabaret tax liability, the taxpayers were taking the position that they did not owe any cabaret taxes. Further, plaintiffs argue that the return itself is designated "Quarterly Federal Excise Tax Return" and not *one of the* Quarterly Federal Excise Tax Returns, and that the return indicates that there is one return for a taxpayer's quarterly federal excise taxes and not that there shall be one return for each excise tax. Plaintiffs point out that for each of the quarters under question they filed the necessary Form 720 which was printed and distributed by Internal Revenue Service, and that if there is any weakness in these forms, then Internal Revenue Service is at fault and not the taxpayers. Finally, plaintiffs contend that it is not necessary to insert the number "0" or the word "none" opposite the tax involved on the Form 720 to put Internal Revenue Service on notice that one is denying the liability for the tax involved on any return.

The question for decision may be stated as follows: was the Government barred by the three-year statute of limitations from assessing plaintiffs for cabaret taxes in the first two quarters of 1957? Stated simply, did plaintiffs *file* a cabaret tax return for the first two quarters of 1957?

Plaintiffs' argument does have a certain appeal. That it is not an unreasonable argument is demonstrated by the answers to special interrogatories submitted to the jury. The jury found as a fact that the returns in question were sufficient to put Internal Revenue Service on notice that plaintiffs were denying liability for the cabaret taxes for the quarters in question.[4]

Although plaintiffs' argument is appealing, it is not decisive. The Court is not convinced that the Government has slept on its rights and has failed to assess timely the deficiencies against plaintiffs, for the reasons which follow.

Section 6501 of the Internal Revenue Code contains the general limitation statute. Subsection (a) provides:

"Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."

Subsection (c) provides the exceptions to the general rule, and Exception No. (3) states:

"In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

---

4. The following interrogatory is typical of the group submitted:

"In the event you have answered Question No. 5 'It was not incidental,' then only in such event will you answer Question No. 17.

"QUESTION NO. 17.

"(a) Do you find from a preponderance of the evidence that plaintiffs filed a quarterly federal excise tax return for the first quarter of 1957 for the El Dorado Ballroom?

"Answer: 'Plaintiffs did file such quarterly federal excise tax return.' or 'Plaintiffs did not file such quarterly federal excise tax return.'

"(b) Do you find from a preponderance of the evidence that the writing designated Plaintiffs' Exhibit No. 5 constituted reasonable notice to defendant that plaintiffs as operators of El Dorado Ballroom denied that they owed any tax designated on said writing as 'Roof gardens, cabarets, and similar entertainments' for the first quarter of 1957?

"Answer: 'It did constitute such reasonable notice' or 'It did not constitute such reasonable notice.'"

In this case the Government seeks to assess a tax which admittedly is owing, and plaintiffs seek to interpose the bar of limitations as a defense against the Government's claim.

██ The common law recognized no fixed time for the bringing of actions, and limitations thus are statutory, deriving their authority from legislative, and not judicial, acts. Historically, the sovereign was immune from suit and likewise immune from limitations.

"Unless it is expressly or by necessary implication provided otherwise by constitution or statute, statutes of limitation do not run against the sovereign or the government, either against a state or, according to the decisions, against the United States, and do not operate to bar suits involving public or governmental rights which are brought by, or on behalf of, the state or government in its sovereign or governmental capacity. This rule is based on considerations of public policy. * *

"Statutes of limitation must be strictly construed in favor of the sovereign where they prescribe a period of limitation against the government or it is sought to apply them so as to bar the rights of the government." 53 C.J.S. Limitations of Actions § 15a(1).

If the Government consents to be barred by limitations, the conditions that will be sufficient to bar it must be strictly complied with.

The reasons why the Government will not accept plaintiffs' argument are set out in Rev. Rule 59–295, 1959—2 Cum. Bull. 420. The ruling itself states:

"Where a person files a Form 720, Quarterly Federal Excise Tax Return, on which he reports and pays the tax on admissions but makes no entry concerning his liability for the cabaret tax, such return does not constitute a cabaret tax return. Accordingly, in such cases, the cabaret tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

At 421, the ruling distinguishes the admissions tax and the cabaret tax, and sets forth the reasons that explain why the filing of an admissions tax return will not constitute the filing of a cabaret tax return.

"The admissions tax is one of the so-called 'collected' taxes. That is, the person paying the admissions charges is the taxpayer, whereas the person collecting the charge is responsible under the law for collecting and returning the tax to the Government. Thus, if the person collecting the charge is not the taxpayer and, even if he fails to collect the tax, willfully or otherwise, the tax as such cannot be asserted against him. In the case of a willful failure to collect or pay over the tax, the law provides sanctions in the form of penalties.

"In contrast to the admissions tax, the cabaret tax is one of the so-called 'incurred' taxes. That is, the proprietor of the establishment collecting the payments for admission, refreshment, service, and merchandise is the taxpayer. Therefore, the proprietor remains liable for the tax without regard to whether he passes it on to his patrons.

"Although amounts paid for admission may be subject to either, the admissions tax and the cabaret tax are separate and distinct taxes and the requirements for filing a return apply separately to each tax, even though for convenience the return for both taxes may be made on the same form. Accordingly, it is held that where a person files a return on which he reports and pays the tax on admissions but makes no entry on the return concerning his liability for the cabaret tax, such return does not constitute a cabaret tax return. Therefore, the cabaret tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

The above technical distinction between the two taxes is not the only reason that the Court holds the returns filed by plain-

tiffs to be insufficient to constitute cabaret tax returns. If the taxpayer is required to make an entry next to the tax which he denies in order to start the period of limitations running against the Government, it eliminates the possibility that the taxpayer might fail to consider his potential liability for a particular tax. Although the taxpayer may in good faith fail to realize that he may be liable for a particular tax, his good faith relieves him from fraud prosecution but not from the extended limitations period. The issue here is not an issue of good faith. McDonald v. United States, 315 F.2d 796, 801 (6th Cir. 1963). McDonald points out that, generally, the return must comply with the requirements prescribed by the Commissioner. 315 F.2d at 800. The following Revenue rulings stand for the proposition that the taxpayer must make an affirmative entry which reflects a denial of liability for a particular category of excise tax,[5] in order to start the statute of limitations running against the Government. Rev. Rule 60–312, 1960—2 Cum.Bull. 398; Rev.Rule 59–366, 1959—2 Cum.Bull. 418; Rev. Rule 58–274, 1958—1 Cum.Bull. 418.

Plaintiffs here have not satisfied these minimum requirements. Being of the opinion that the question for decision is one of law, and not one of fact, the Court holds that the plaintiffs did not file a cabaret tax return for the quarters in issue, and that the assessment was not barred by the statute of limitations. McDonald v. United States, supra. Plaintiffs are liable for the proper amount of excise taxes for the first two quarters of 1957. Accordingly, the Court denies plaintiffs' Motion for Judgment as to these two quarters.

Counsel for plaintiffs shall prepare the proper form of judgment, reciting the correct amounts as agreed upon by the plaintiffs and defendant, and submit the form of judgment to the Court within ten days.

The above and foregoing constitutes the Court's findings of fact and conclusions of law in the above matter.

The Clerk shall file this Memorandum and Order, and send copies thereof to respective counsel.

---

5. Examples of such an affirmative entry sufficient to deny liability for the particular category of excise tax, include insertion of the number "0" or the word "None" opposite the tax involved on the Form 720.